Good morning. Our first case this morning is IN RE ELBERS. Ms. Scott. Thank you, Your Honor, and good morning. I am Julie Scott, and I represent the inventors and the astronomy of Berenger-Ingelheim Medica. May it please the Court, this case centers on what is obviousness and the elements that render an invention not just possible but are not met. Decided art does not teach all of the elements of the claimed invention such that a skilled artisan would be both motivated to develop the claimed invention and would be reasonably able to predict the success. What is the level of skill in the art? Who is the person that we're talking about? I think we're talking about relatively high skill. We're looking at veterinary professionals, so you're looking at a Ph.D., DVM, or similar level. Now, Ms. Scott, Myers and Elbers not only discuss the attenuation principle, but they tell you exactly where to do it, the histidine 349 position. And then you've got the Fulton that's putting the two virus types together. What's left to be done? Well, I think that we're focusing on... I mean, it's an astounding level of disclosure that they get you right down to where you do the attenuation on the chain. Certainly Myers and Elbers identify one, and it is the one that is used in this vaccine and in the claim of a particular mutation that could be used. But both of those are not looking at combination vaccines. They're each looking at... That's Fulton. But why wouldn't one of skill in this art, recognizing that Fulton is... This is close art. It's, as you say, art with a high skill. These people are going to know what's going on in the field. Why aren't they going to say, well, let's take Myers and Elbers and put it together with two vaccines instead of one? It's certain to work better. Because they have this high skill. And in vaccine technology, just as your honor has noted that in the chemical industry, that with drugs, just because you have possibilities doesn't make... It's an unpredictable art. And therefore, you identify possibility. But that doesn't mean that you have a reasonably predictable outcome until you actually try it. And the same is true with vaccine technology. In fact, it might even be more unpredictable than a chemical drug. I understand that, but wouldn't it be... Wouldn't one be motivated to make this effort instantly? No, because the difficulty... You know the value of having both vaccines instead of just... Both viruses instead of just one? You know the attenuation technology? And they even tell you where to attenuate. I'm just... I'm missing something here. Because the skilled artisan also knows that when you combine two viruses together, they don't necessarily work as they did individually. So BVDV, the type one genotype, we'll say that works. Type two... And by looking at the different... At what the art teaches, and it's telling you, you're going to reach a certain attenuation level with this combination. Isn't that... Doesn't that lead you to obviousness? But the art doesn't actually teach that. And that's the difficulty here is that Fulton, which is the only one that talks about a combination, so you can go to, you know, that's your combination there to get to your obviousness for the art. It's talking about killed vaccines or modified live vaccines. Those are not recombinant. And if you look at the results just in Fulton, I mean, they compare, you know, killed vaccines versus modified live. They didn't get similar outcomes for the same genotype, for the type one. You look at those results, they're different. Even then within the modified live, where they had several examples of that, they got variable results. They weren't predictable. If anything, a skilled artisan is going to look at that and say, you know, when I do this, I have to test each one of these. I can't predict what my outcome's going to be. You know, there's no doubt that if we were here on anticipation, you'd be right, that there's no one piece of art that has everything. But where in the record did you submit any kind of evidence as to what a skilled artisan would or wouldn't understand from these pieces of prior art? You didn't submit any affidavits, and there was nothing that prevented you from doing that. I think we're, you know, and maybe I'm misunderstanding your question here, that... Why didn't you submit any affidavits from one that you claim would be of appropriate level of skill in the art to speak to this question? During the prosecution of it? Yes. I regret, I don't actually know the answer to that because I wasn't the prosecuting attorney on that. I, you know, I took this after some of the, we're waiting for the response from the board. I'm not fully telling you, you put the two together and it works better. The combination works better. The killed virus has weaknesses over the attenuated virus, so why don't you use the attenuated viruses of Myers and Elbers in the combination that works better with Fulton? I'm struggling here to, is there any reason that one would expect it not to work? Is there anything that teaches a way? I see no teaching a way either. Well, Myers suggests that you could use just the BVD type 1, the one that's recombined. It also provided at least some protection against type 2, just at the same, you know, similarly what Fulton did. Fulton, none of those vaccines that were tested knocked it out of the park for both type 1 and type 2. Let me ask Chief Rader's question from a different angle. What is it that Fulton, Myers, and Elbers would have to, what those references would have to say in order to make the claims obvious? I think Elbers would need to have discussed combinations and it does not. I think if that one in particular had done it, Myers is directed only to type 1. It never mentions other types of viruses. It talks about swine fever, that's a separate virus, but since they're different animal species, I don't think the skilled artisan would reasonably combine those together. I think Elbers would have been the most logical choice if it had suggested combining those together. Then I think the invention would be obvious, but Elbers didn't do that. Let me go back to your teaching a way point. You said that Myers teaches a way because it only addresses type 1. That's not the same as teaching a way. No, it's not. Maybe if you had 100 years of nobody ever considering type 2, you might be able to argue that that is evidence of teaching a way, but I don't see where in Myers they actually teach a way. Myers, in their results, they found actually that they had cross protection to type 2. Limited cross protection. Right, a limited cross protection, just as Fulton had limited cross protection when they had both type 1 and type 2 in the commercial vaccine, the one that they tested. It wasn't fully effective. If you're looking at it from the skilled artisan's point of view who's taking it all, the fact that it's a vaccine, you're not just trying to make a recombinant virus. You're trying to make a vaccine, something to prevent a disease. They're going to be aware of the regulatory authority and those hurdles. They have to prove that both of these work effectively individually and then the combination itself works each component as well as it did individually or better in order to get the commercial license for that. So they know that hurdle is there. In addition to that, the skilled artisan is also aware that just because you use, as Fulton did, a killed virus or a modified live virus, those viruses are not predictable of what you get with the recombinant virus's results. But Fulton is much older than Myers and Albers, so clearly we've moved on past the killed viruses. Right. At the time of Fulton, it was published in 2001, recombinant technology was no. So even in reading Fulton at the time, you'd be aware of it. There wouldn't have been a motivation at the time of Fulton because there wasn't a regulatory avenue to get that type of vaccine approved for commercial use. So at the time of Fulton, that motivation was lacking for the skilled artisan. We have to be looking at the date of your application. Right. And at the date of the application, then you're looking, then Myers and Albers are able to come in to play because they're after Fulton. So when you're looking at Myers, it's this teaching to the type 1 virus and swine fever. And then in Albers, it does talk generally about BVDs, that there is more than one type. There is a type 2 out there. And that the attenuation, you know, this principle of attenuation through a deletion could be applied to either type. But it never discusses and points out that when you combine different viruses together in a combination, you can't predict reliably that it's going to work because the skilled artisan knows that when you put two different viruses together, they interact with each other. You know, we don't always understand how they interact. You know, sometimes they precipitate. One or more, one or both. Is it obvious to try? It's not. There's, I think, a distinction between what's a reasonable possibility to try versus a predictable expectation. And I think, as I understand Judge Rader's opinion in Assai versus Dr. Reddy, that when we look at KSR, KSR is looking at a finite number of possibilities, which we can argue we've got that here. And that those are not just possibilities, though, that they're, you know, reasonable expectations, that they're predictable. And I don't think that when you're looking at a combination vaccine, that you can reasonably predict that the vaccine is, you know, your composition is actually going to be a vaccine that can prevent, by definition, a disease. Do you want to save your rebuttal time, Ms. Scott? Yes, thank you. Okay. Ms. Rasheed? May I please have the court? Just a couple of points on what the appellant's counsel has just stated. Under the flexible standard of KSR, you don't need a specific, exact teaching of combining the two recombinant viruses. What standard is, is that there has to be a reasonable expectation of success in combining those two viruses, and a motivation to combine those two viruses. And we have both of those here. I'm sorry, could you speak up a little bit? Yes, Your Honor. Here, it seems that Boehringer's counsel is arguing that if there was any possibility that the combination would not work, then their claim 20 is not obvious. But that's not the standard. The standard is that the prior only needs to provide a reasonable expectation of success. Yes, she doesn't say any possibility it won't work. I think the argument is, is that much like other cases that we've dealt with in the past, that these viruses are unpredictable, and that it's not so linear as you might have us believe, in terms of putting two or three things together and knowing they're going to work. That's true, Your Honor. While it's true that recombinant technology might be generally classified as an unpredictable art, that characterization against an obviousness rejection has to be balanced against the scope of the claim and the teachings of the prior art. Here, the claim is that these two viruses can be combined. There's a motivation to combine them because you get better efficacy. Furthermore, there's a reasonable expectation of success because we know that the two viruses separately work. The only question here is whether they would work if they were combined. And there's no evidence in the record here that teaches us that they can't be combined, that these two viruses are incompatible, or that they would render the other one ineffective. Do you agree with your co-counsel's or your opposing counsel's definition of the level of skill in the art? I think that's a fair level of skill in the art. It's very high. A skilled artisan in this field routinely manages this type of unpredictability. Just because the combination would have to be tested and verified doesn't mean that it passes the test for penitential. Let's say that we find that the technology is inherently unpredictable. Could we still affirm the board? Yes, Your Honor. Even if there is some unpredictability in this art, that doesn't necessarily mean that the invention... Not some unpredictability. If it's inherently unpredictable. If the art is unpredictable, I believe that this claim would still be obvious because there's a reasonable expectation of success here. You've got the prior art that teaches this combination, or a combination of BVDV1 with BVDV2. We know that it works separately. The only question is whether it would work when combined. What about the argument that when you're dealing with Fulton's, because you're dealing with where you don't have recombinant viruses, that that doesn't give you enough and in fact raises some questions about whether you could ever do it with recombinant viruses? Well, while it's true that Fulton was dealing with killed vaccines, Fulton does disclose live vaccines that were a live vaccine that included the two viruses and that was commercially available. Fulton doesn't test that particular vaccine, but Fulton does say that it's available. And the fact that that particular combination hasn't been made using recombinant DNA, I don't think renders this claim obvious. Can you address motivation in this case? Sure, Your Honor. There is an expressed motivation in Fulton to combine the type 1 virus with the type 2 virus because Fulton teaches that the type 1 vaccine alone is not sufficient to prevent the BVDV virus from reoccurring, from being caused by the type 2 virus. So there is motivation to combine. There's further motivation to use the recombinant viruses because Elbers and Myers teach that those are the best viruses to use. Those constructs are the best constructs to use. So why wouldn't a person with a skill in the art use constructs that are less likely to revert back to wild type instead of using killed vaccines? We know that the recombinant vaccines are better because Elbers and Myers teaches that. There are no further questions, Your Honor. Okay. Thank you. Thank you, Ms. Rasheed. Ms. Scott? Just a couple of points. With regard to routinely, my colleague suggested that those with skill in the art are going to routinely be able to manage unpredictability. I don't think that's true. If that were true, we wouldn't have failures with regard to vaccines, you know, potential vaccines. Are you arguing that in unpredictable arts we can never apply obviousness? No, I'm not. But I'm saying that to diminish the unpredictability... Wouldn't we have to have something that either leads us into secondary considerations, some leading away? Wouldn't we need something that supports your case when they've put up a pretty good prima facie case? I think that we're still misconstruing that when you have possibilities, they're still not reasonably predictable. And just because the level of skill in the art is high doesn't mean that the unpredictability goes away. That's about the only thing you're telling me this is unpredictable. And you concede we can have obviousness in unpredictable arts. Why isn't this that case? Because of the combination of two different viruses together. And when you make a combination... Colton tells you that works. And Elbers and Myers tells you do it with the attenuated because that works even better. Where is there anything that says this possibly can't work, so don't do it. There's no teaching away. There's no unexpected results, secondary considerations. There's nothing after they put forth the prima facie case that helps you, except your unpredictability argument. But that doesn't really help you either. I respectfully disagree that when you're looking at it, I think we're still confusing what the possibilities are with a predictable expectation. And I don't think we have a reasonable expectation here with a combination. One is skill in the art is going to know that. That's inherent. But it's your burden at this point to convince us that the decision was wrong, and yet there's nothing been put in the record to support what you're saying. I mean, other than the nature of the art that you're in. You haven't put anything from a skilled artist in. You haven't told us about secondary considerations. There's nothing. Nothing was submitted in the record. I mean, that's what we have to work from, right? From the record, yes. You're correct. That is what we have to work with. And I can't obviously submit evidence at this point in time. So I think that, yeah, I think it's still, even though it's a high level of skill, I think that the evidence can be interpreted admittedly either way. Clearly, we each have interpreted the evidence in this case differently. Is there any place for a, let's say, a KSR type common sense reasoning in the context of this type of technology? Yes, I think there is. I think when you're, you can, Elvers and Myers narrow this down to propose a finite number of possibilities. But just because they're finite possibilities, then when you look at KSR, the question is do you have a reasonable expectation that any of those possibilities is going to work? Can you reasonably predict it, or are you just going to have to try it? All right. Thank you, Ms. Scott. Thank you. Our next case is MagSilk Corporation versus...